MALONE *versus* HARPER, et. al.

## (*Decided at January Term, 1332.*)

[NOTE.—The Reporter has been induced to publish the case which follows, though decided under the former organization of the Supreme Court, from the belief, that the decision of the Court may have an important influence on the future law of the State in respect to the making of wills.

The subject of devises, either of personal or real estate, has received so few illustrations in this country, from the decisions of our courts, that the collation of the authorities, embraced in the learned argument of Judge Hopkins, will, no doubt, be acceptable to the bar, at large, and prevent much research. hereafter.

The case should, properly, have been reported in a former volume; but a desire of consulting the members of the Court, engaged in the decision of it, has obliged the reporter to defer it until now.]

1. Where it appeared that a deceased party applied to an attorney to prepare a will, under certain instructions, (by which he designed, particularly, to provide for a dependent sister, independent of the control of a dissolute and extravagant husband,) and the will being prepared, was exhibited to the applicant; and in the presence of the attorney and a witness, he made unimportant alterations, and seemed satisfied with the draft thus altered, and gave the same to the attorney to be copied; and the said draft, after being copied, was handed to the applicant to be executed, and he received it, saying he would *think of* or *examine it;* and after his death the said copy, (unaltered and proven to be the exact copy of the draft, so altered by the applicant,) was found in his possession—held to have been improperly admitted to probate, as a devise of the personalty of the deceased.

This case was brought into the Supreme court, on a question raised in reference to the probate of a will. An instrument in writing having been exhibited to the County court of Lawrence, as the will of David Mason, deceased, and probate thereon prayed, of the court; the said court had a jury summoned, who, on the evidence, determined the said

paper to be the last will and testament of the said · Mason, as to the personalty : and probate was had accordingly.

The paper so admitted to probate, was not signed by the deceased : and the evidence submitted to the jury was, in substance, as follows :

Mr. *Ormond,* the counsel for Mason, proved, that Mason, the deceased, applied to him to draft his will; that, by the directions of Mason, a will was prepared in rough draft, and submitted for his inspection, in the presence of one Banks : that, after the will had been read, and unimportant alterations made, at Mason's suggestion, the latter appeared satisfied therewith : that it was then proposed, by Mr. *Ormond,* that, as the draft was interlined and blotted, he, *Ormond,* would have it copied : that, this being assented to, Mr. *Ormond* took the will, and had it copied ; which copy was, in every particular, that of the original.; and was the paper, in this case, presented for probate. That, on the same, or the next day, the copy of the said will was given to the deceased, and he was advised to publish and declare it, witnesses being present ; but that he took the same into his possession, saying, he would think of it, or examine it.—That the paper was taken home by Mason, where it was found, after his death, in its original state, unattested, and without signature.

It was further in proof, that Mrs. Parham, the sister of Mason, whose husband was dissolute and wasteful, was intended to be the object of Mason's bounty : and the will so prepared, was drawn with that view.

Many witnesses were sworn, who generally proved the intention of Mason to provide for Mrs. Par-

ham; but it is not deemed necessary, to elucidate the case, that the evidence should be detailed at length.

There was proof, however, that Mason designed, from many conversations held with the witnesses, to make a large distribution of his estate to his sister, Mrs. Parham; who was the principal devisee in his will: that he frequently said, he had provided for her, and made his will; and, it was proved, by one witness, that Mason, having visited the witness, in Orleans, told the latter, he had made a will, (drawn by Mr. Ormond, and proved to be the same offered for probate,) which the witness examined, and, on being asked by the deceased, his opinion as to the distribution therein contained, approved the same; and that the deceased said it was the way he wanted it.

The bill of exceptions, taken in the cause, showed, that the court was asked, by the defendants below, to instruct the jury, that, if they believed Mason contemplated any further act to the will, they must find it not valid. The court refused thus to charge, but instructed the jury, that the omission to sign the will, did not, of itself, invalidate it, as to the personalty; but, that, as the testator intended, by the paper, to convey his real, as well as personal estate, and had not so published it, as to pass real estate, they might take that circumstance, and from it infer, whether the intention to adopt the will, was abandoned, or not.

The defendants further moved the court, to charge the jury, that, as it appeared from the paper, that it was not signed nor sealed, nor attested, though blanks and a scroll appeared as left, for those purposes—it was evident, from the paper itself, that Mason intended

some further act, to give it validity—which, not having been done, the paper could not operate as a will, even as to the personalty. Also, that if the jury believed that Mason had not adopted the paper, as his will; or, that, if after such adoption, if made, he had changed his intention—then the paper was no will. The court refused so to charge; but informed the jury, that, if, at any time, after the writing of said paper, the deceased adopted it as his will, it became so as to the personalty: and that an expression of intention, afterwards, to alter, in future, parts of said will would not amount to a revocation of the will, as to personal estate. And, if the jury believed that Mason, by word or act, or other circumstances, did not intend to establish the paper as his will, they must so find.

The court, also, refused to charge, that if the deceased, at the time of his death, did not believe said paper to be his will, it could not be held so—all which several matters, having been excepted to, were assigned in error in this court.

*J. L. Martin* and *Ormond,* for plaintiff.

*Hopkins, contra.* The source of the right to make testament of personal property is in the common law. All the statutes respecting such testaments are prohibitory. None ever gave or enlarged the right: 2 Bla. Com. 491; 1 Rob. on Wills, 5, 6.

The annals of jurisprudence afford no trace of a time, when it did not exist to some extent, in England. While it was exercised in the mode in which the common law allowed it to be, parol evidence was as competent and sufficient to shew that a testament

had been made and what it was, as written testimony. Since the statute of frauds in England all testamentary depositions of personal property there, except nuncupative wills, made according to the statute, and wills made by soldiers, in actual service, or seamen at sea, must be in writing : 1 Rob. on Wills, 147 ; Rob. on Frauds, Appendix 472.

The restraints on the power in this State have been created by provisions in our statute concerning wills, similar to those in the statute of frauds, which imposed them in England : Ala. Dig. 884.

There is no declaration in either statute, that testaments shall not be valid, unless they be in writing; but nuncupative wills are declared to be void, unless they shall be made by persons in the situations described by the statutes—with all the formalities prescribed and reduced to writing within the time required, excepting such wills made by soldiers and seamen, the validity of which depends upon the common law. The effect of each statute is to prohibit the making by other persons than those of the two classes excepted, of wills, which are not nuncupations according to the statute, unless they they be in writing. If wills are in writing, as they were most frequently before the statute, the statute establishes no test by which their validity is to be tried. Their validity depends now upon the common law. Any written disposition of personal property, which, before the statute would have been a good tenement, is a good one now. As the statute requires no signature or seal—no ceremonies in the publication or subscription of witnesses—they are not necessary. According to the common law, a testament of personal property, in the hand writing of the testator, with-

out his signature, seal, or subscribing witnesses, is valid. So it is, although written by another, if proved to have been approved by him, or written agreeably to his instructions. The competency of such evidence does not depend upon the persons, who may give it, being subscribing witnesses : 1 Roberts on Wills, 148, 150, 151, 152, 156 ; 2 Blac. Com., 501, 502, and note 16 ; Toller on Ex'ors, 58 ; 1 Dal. Rep. 286; Comyn's Rep. 452, 453, 454; Bac. Abr. 328, 329 (title, proof;) Peck's Rep. 306 ; 1 John. Ch. Rep. 153 ; 1 Call's Rep. 479.

That the English statute of frauds and ours concerning wills, did not introduce any rule applicable to written testaments ; and that the principles they contain for the regulation of devises, do not affect the former, will appear from considerations I shall proceed to present. Whilst the testamentary power over personal property has been always exercised, the feudal system denied any such, over real estate.— The statutes of Henry VIII, called the statutes of wills, created the power to devise, in writing, lands held by socage tenure, and the subsequent conversion by an act of parliament, of military tenures into common socage, brought nearly all the lands in England, within these statutes : 1 Rob. on Wills, 13, 14, 15, 16, 17, 18.

Before the statute of frauds, the law in relation to testaments of personal property, which has been referred to, was settled, and was applied also to devises, on the ground, that the statutes of wills required them to be in writing only. The application of it to devises, caused the clause in the statute of frauds, which requires the signature of testators to devises, and the subscription of witnesses : 1 Rob'ts on Wills, 15, 16, 17, 18, 150 to 152.

If the law had not been too firmly settled to be shaken, the clause in the statute of frauds, which prevents the effect of it, on devises, was unnecessary; and if it had not been considered settled, and properly too, in regard to testaments, it would have been abolished by the act, which not only exempted devises from its operation, but changed the common law, in relation to personal property, so far as it authorised such property to be bequeathed without writing, by any person, in any situation, and at any time.   As an alteration in the common law was made, in these respects only, by a statute, which withdrew, also, one subject of property from the effect of principles, that were left to operate on another—no one can escape the conclusion, that the legislature did not intend to make any other change. The statutes of wills put devises upon the same ground, in all respects, on which written testaments then stood, and had for ages.   The object of evidence, under these statutes, was to shew that the testator intended to make the devise contained in the writing, and the intention was shewn by testimony of the same kind and amount which was necessary in the case of a testament of personal property.— But the statute of frauds requires that a devise shall be a statutary conveyance.   It may be certain, that a particular act was intended, to make a particular disposition of real estate; but if the act do not conform to all the directions of the statute, the evidence of it, that may be offered, will be as totally disregarded, as parol proof, that one had given a tract of land to another, would be.   In both the cases supposed, there may be testimony to satisfy any mind, for every other than a legal purpose, of what the intention

of the owner of the estate was. But as the right to convey land in any mode, was conferred by statutory law, it must be exercised on the terms prescribed by the statutes, and proved by the evidence they require.

But the power to dispose of personal property depending upon the common law, may, and must be exercised on the terms prescribed by this part of our code; and the exercise of the power, in giving, selling or bequeathing such property, must be shewn by the kind and amount of evidence required by the common law.

The right to bequeath personal property, according to the common law, with the single statutory qualification, that it must be exercised in writing, is as perfect as that to devise real estate agreeably to the statute. The consequence may be, and has often been, that a will, in which both real and personal estate are included, has been established as to the latter, and rejected as to the former. This must be the result in all such cases, if the proper intention is proved, as required by the common law, and not shewn, as demanded by the statute. The union of both kinds, in the same writing, cannot prevent the dispositions of personal property, from being determined by the same kind and amount of testimony, which would be sufficient, if they were not connected with devises. Why should an union afford any better ground to require bequests of personal property to be proved by the evidence, which only can shew that a devise has been made, than to allow devises to be proved by the testimony that is sufficient to shew that a testament has been executed? The power over both kinds of property may be exercised either jointly or

separately.    If an attempt be made to include both in the exercise of the power, a defective execution of .it, as to one, ought not, and cannot affect its. perfect execution as to the other : 2 Henn. & Munf. 506, 512 ; 4 Vesey, Jr. 200, notes, A. B. ; Roberts on Frauds, 143, 327, 348, 349, 359, 360, 361, 362, 363 ; 1 Brown's Ch. Rep. 147 ; Sugden on Powers, 234 ; 1 Pickering's Rep. 239, 243, 244 ; Peck's Rep. 306, 307 ; 1 Equity Cases, Abr. 408, 409 ; 4 Wheaton's Rep. 91, note ; 2 Vesey, Jr. 665 ; 8 Comyn's Dig. 406, §4; Toller's Law of Exo'rs, 379 ; 1 Call's Rep. 479 ; 1 Cox's Ch. Rep. 240 ; 2 Blackstone's Com. 285, note 12.

All that can be said in favor of making the proof of a testament, in connexion with a devise, different from what would be sufficient, if it stood alone, is, that unless the devises as well as the bequests, are considered valid, the establishment of the latter only, would probably violate the intention of the testator, who might not have made the bequests, but from his belief that the devises were good.    This assertion has no support either in authority, or in the opinion of any author. It is not an acknowledged legal principle, nor can it to be shewn to agree with one.    It is not included in the principle, that if an agreement embracing both real and personal property, or several articles of either, which is founded upon an entire consideration, be void for any of the property, it is void for all.    The reason of this principle is obvious.    It only can be known by others, from the agreement that the vendor consented to part with all the property described in it, for the consideration expressed : but it cannot be known to any other person, and may not be to the vendor himself, as he might

never have determined for what particular portion of the consideration, he would be willing to sell any particular part of the property. If such an agreement be void, as to the real estate embraced by it, it must be, also, as to the personal property. No contract exists in relation to the consideration to be paid for the personal property. The proposition, that a testament in connexion with a devise, must be proved by the kind and amount of evidence, and no other or more, than would be necessary, if it stood alone, is supported by the authorities which have been referred to, and agrees with the legal principles that are applicable to the other modes, in which both kinds of property may be disposed of, by the same act. If the owner of both kinds, attempt, by one agreement, to bind himself to convey both to one or more purchasers, and each kind for a separate and distinct consideration, although the agreement may not afford the necessary evidence to make it valid as to the real, it will be binding as to the personal property, if supported by testimony, which would be sufficient to establish an agreement that related to personal property only. The effect of a will, including both kinds of property, may, from defects in its execution, like that of the agreement in the case supposed, be limited to the personal property. But a will needs no consideration to support it. The propriety of a testator's motive for any disposition, cannot be inquired into. The motive, if known, and known to be most base, could not effect the disposition. A man, with a house full of amiable and obedient children, may give all, by a will or otherwise, to one, bound to him by no tie of blood, and who had seduced him into vices, which destroyed his natural affection for his own offspring.

MALONE *vs.* HARPER et al.

It is an acknowledged principle of law, that if one for whom a testator intended his greatest bounty, and whose children were the objects of his fondest affection, die after the will was made, but before the testator, the legacy to such an one is lapsed; although of his death, the testator himself died ignorant.— The children of such an one cannot take; and, as to the property that formed the legacy, the testator dies intestate.   But all the other dispositions in the will, may be valid.   The motive which induced the testator to make them, need not be known; and as the knowledge of it is immaterial, inquiry into it, or into any connection between such motive, and that which influenced him to make the legacy that lapsed, may and ought to be denied.  The connection, if it exist, could form a part only of the motive for the other dispositions; and the entire motive, if disclosed, could not affect them.

A devise properly executed, cannot be defeated by a subsequent and different one, which wants any one of the formalities required by the statute.   The real intention appearing from the last and defectively executed devise, must be disregarded, and the first will convey the land, because it affords the only legal evidence of the intention of the devisor, to convey it: 2 Henn. & Munf. 510 ; Peck's Rep. 306 ; 1 Rob. on Wills, 198 ; 2 Ves. Jr. 652, 665 ; 1 Equity Cases Ab. 408, 409.

The effect of this principle would be, that, if a person with two children, and personal property only, after having bequeathed the whole of it to one of them, were, with one half of it, to purchase real estate, which, by a devise, he intended to give to the neglected child—the devise, if it did not notice the

remaining personal property, and were defectively executed in the single respect of the failure of one of the three subscribing witnesses, to attest it, where the devisor might have seen him, would be void ; it woud be so, although hundreds of witnesses might be ready to swear to what would be incompetent testimony— that the personal property was not noticed in the devise, because the testator intended one child to take this property under the testament, and the other the land, in virtue of the devise, and died, in the belief that the effect of the devise and testament would be an equal division in value, of all his estate, between his children. In such a case the father would die intestate as to the land. The first child would take all the personal property, under the testament, and share equally with the other, in the division of the land. He could not be required to account for the value of the personal, when he applied for his share of the real estate ; because he received that property as a bequest, after his father's death, and not as an advancement in his life-time: Toller's Law of Executors, 379.

Why, though a testator's devises may be void, for want of the proper evidence, that he intended to make them, reject his bequests, when they are supported by all the testimony, which would be necessary, if they were alone and unconnected with any attempt, on the part of the testator, to make devises ? As the testimony, in such cases, is not competent to shew that one intended to make a devise, why receive it, to destroy the effect of evidence, that proves a testament was executed ? Although the statute of frauds requires an agreement for the sale of real estate to be in writing, and that the consideration of the sale

shall be stated in it; yet, as it does not include sales of personal property in the restrictions, an agreement for the sale of each kind, if made upon a separate and distinct consideration, will be, as has been remarked, valid for the personal property, although it may be void for the real estate. If void for the latter, because the agreement, although in writing, does not state the consideration—a defect which the statute does not allow to be supplied by parol evidence —yet, what the consideration was, and that there was a distinct one for the personal property, may be shewn by testimony of this kind. The state of personal property in the case supposed, is ascertained from evidence of the same kind and amount, which would be necessary, if it had been made alone, and the statute of frauds did not exist. Why should a testament in writing, in which there may be a defective devise, be proved by any more or different evidence, than would be required, if such devise had been omitted, and the statute regulating devises had never been enacted? This statute claims only to regulate the exercise of the testamentary power over real estate, as the statute of frauds does that of selling the same kind of property : neither interferes with the power which the common law confers, to sell and bequeath personal property. As the power over personal property, when exercised jointly with that over real estate, is not subjected to the restraints imposed by the statute, on the power to sell the latter kind of property, why should it be, when exercised jointly with the right to devise real property ?

The common law allows a bequest of one thing to be good, although the testator, when he made it, intended to make others at a future time, and died

without having done so. The reason of this principle is obvious. In the cases to which it applies, there is the evidence required by the common law, that he intended to make the single bequest, and wrote it, or directed it to be done, with the purpose of making it. Testimony that he intended to make others, at a future time, ought to have no effect on the one actually made : no more than evidence that a person intended to make future gifts, which he died without having made, would have on one he did make and deliver, when he first entertained the intention to make the others, in future. The right to give personal property by a bequest is as perfect as that to make donations in one's lifetime. In either case any one, who claims a benefit, must shew, by proper testimony, that the act, he alleges has been done in his favor, was done. If he do so he cannot be deprived of the benefit of the act, by proof that other acts in favor of others were contemplated, which were never done. A devise to one, properly executed, is good, though there may be twenty papers shewing an intention to make, in future, that number of devises to others. It is not a sound objection to this principle, that a person who expressed his intention to dispose, at a future time, of the whole of his estate, when he disposed of a part, might not have begun to exercise this right, but for his expectation that he would finish the exercise of it over all his property before he died. The objection is without weight against the perfect gift in the case supposed ; it has no effect upon a well executed devise, or on a will, in which the testator's intention appears clearly, to dispose of all he had, but which omits half, or more. Why should it be allowed to operate against one or more bequests? They

ought to be determined by the evidence in their fa-
vor, and against them, without regard to the motive,
which induced the testator to make them.    As a be-
quest is not defeated by testimony that others were
intended, by the testator, to be made in future; sure-
ly the bequests in this case cannot be disregarded upon
evidence, that when the testator made them, he in-
tended at a future time to make devises.    The princi-
ple of the common law is clear, that if a testator, who
has declared his whole will in relation to his person-
al property, postpone the formalities to a future peri-
od, when he intends to comply with them, and die
without having attended to them, his will is good.—
The principles that support one or more bequests,
made with the intention of making others in future,
or of complying, at a subsequent time, with formali-
ties in regard to them, although the contemplated acts
may never be done, are contained in the following
authorities : Comyn's Rep. 454 ; 1 Pickering's Rep.
243, 244 ; 2 Vesey, Jr. 652, 665 ; 2 Henn. & Munf.
506, 510, 517, *Coghill* vs. *Cogbill.*

Cases, in which wills, including both real and per-
sonal estate, were established as to the latter, and re-
jected for the former kind of property, are contained, in
1 Robts. on wills, 151, 152 ; 4 Vesey, Jr. 199, note A,
200 note B ; 2 Vesey, Jr. 652, 665 ; Robts. on Fds.
327, 362 ; Brown's Ch. Rep. 147 ; 1 Equity Ca. Ab
408, 409 ; 2 Ld. Raym. 1282 ; Comyn's Rep. 453 ;
Peck's Rep. 306, 307; 1 Call's Rep. 479 ; 1 Cox's
Ch. Rep. 240 ; 2 Henn. & Munf. 472 and from 502 to
517.

Cases in which testaments of personal property
were established, although it appeared that the tes-
tator intended to do other acts — as, to execute them

formally, or to transfer the dispositions they contained; to other pieces of paper, may be seen in 1 Robts. on Wills, 150, 151; 2 Nott & McCord's Rep. 531; 1 Harris & McHenry's Rep. 509; 8 Comyn's Dig. 406, sec. 4 and 1; Call's Rep. 479; and 2 Henn. & Munf. 502 to 517, heretofore referred to. Most of the cases in the other class shew that the testator intended to do some other act to make the wills more formal.— To overthrow these authorities, the opinion of Roberts in his work on wills and four other cases are relied upon by the counsel for the plaintiff in error. Of the four cases, in which wills, including both kinds of estate, were rejected entirely, the one in Comyn's Rep. 452, was rejected upon one, among other grounds, that there was a prior and existing will, so executed as to convey real estate. The court admitted that, but for the first, the second would be a good will, if it were finished; but the second will was not regarded as finished. A witness proved, that the testator informed him, he had written a second will, and would, when he finished it, shew it to him; but that he never did shew it to him. In addition to the second will, the testator began a third testamentary paper, which he left with the second. In a case in 1 Robts. on Wills, 153, *Griffin* vs. *Griffin*, there was an existing will and the paper, which was rejected as a will, had no more written on it than the commencement of what the testator intended to do. The case in 1 Merivale's Rep. is one in which the paper rejected as a testament, was written fifteen years before the death of the testatrix, and had an indorsment on it, that she intended to have it attested as soon as she could get suitable witnesses. Parol evidence as to the intention was admitted from both sides. On what

ground the court decided against the testament does not appear. In the other case of *Matthews* vs. *Warner*, 4 Vesey, Jr. 186, the alleged testament was written and signed by the testator. It did not appear from the paper, that he intended to use any other formality upon it. The first sentence in it stated it to be a plan, only, of a will proposed to be drawn out. It was proved that, four years afterwards he wrote a different will, abrogating all others. Many witnesses proved, that he had changed his intention of making the disposition of his property contained in the paper, and one that he had seen a will subsequent to the one exhibited as the testament, which disposed of the property differently. Yet one court, the court of delegates, established the paper as a testament. What the Chancellor afterwards said of it, beyond the case before him, was a mere dictum, and is destitute of the character of authority. The same remark is applicable to what the Chancellor said in relation to testaments, in the case of *Coles* vs. *Trecothick*, 9 Vesey, Jr. 249. The only question in that case was, whether there should be a specific performance of an agreement. The opinion of Roberts, that it must appear from the paper itself, and not from extrinsic evidence, that the writer intended the paper to operate as it stood when it was written, is not supported by the cases, to which he has referred. He has cited, with approbation, cases that refute his opinion. He admits that, if a testator write his own will and shew by the conclusion that he intended to execute it strictly, and die suddenly, immediately afterward, it is a good will. In such a case it would appear from the paper itself, according to his reasoning, that the testator did not intend it to operate as it stood

when it was written; yet he admits, extrinsic evi-
dence is competent to prove that the testator intend-
ed to make the disposition of his personal estate, which
the paper contains, and was prevented by sudden
death from finishing the will.

Parol, and extrinsic testimony, is competent in any
case, to shew that one did intend, by a particular testa-
mentary writing, to make the disposition which is con-
tained in it of his personal property : 2 Robts. on
Wills 27, 28; 3 Am. Dig. 517, 519, sec. 17, 31; Tol-
ler's Law of Ex'ors. 3, 14; 2 Dall. 266; 4 Vesey, Jr.
200; 2 Henn. & Munf. 467; Comyn's Rep. 451; Peck's
Rep. 305; 2 Nott & McCord's Rep. 531; 1 Robts.
on Wills, 154; 1 Merivale's Rep. 501.

If it be true, that the omission to have a testamen-
tary paper signed, sealed and subscribed by witness-
es, which appears to have been prepared for a strict
execution, affords a presumption, that the intention to
make it a testament was abandoned, the presumption is
said by the authorities that allow it, to be slight, and that
it may be repelled by slight circumstances : as, for
example, by evidence of the recognition by the testa-
tor of the paper, as his testament—that he intended
it to operate in that form, or to make that disposition
of his personal property, which it contains : Toller's
Law of Executors, 3—14; 2 Henn. & Munf. 510,
511, 512; 3 Amer. Dig. 521, secs. 53, 54; 1 Black.
Com. 404, note 16; 1 Rob. on Wills, 156.

..The presumption is repelled by the evidence in
this case. Mason lived many months after the pa-
per was written. He recognised it at different times,
and to different persons, as his will. He shewed it
to one friend in New Orleans, as his will, and stated
that it contained the disposition he wished to make

of his property.   To another he said he had made a will, written by the person by whom this was—that it contained the disposition of his property which this makes, (and obtained that person's consent to accept the office of executor, which this will confers upon him.)

One witness proved, that he said this paper, as it stood, would be a good will, if found among his valuable papers; and amongst such of his papers it was found.   He took the paper with him wherever he went.   To one of the witnesses he said he had a will, in which he intended to make some alterations.   A declaration of an intention to alter a will is a recognition of it, and can not affect it otherwise than favorably.  · The will must stand as it was when thus recognised, unless the intention to alter be actually executed and in writing : Ala. Dig. 884, sec. 6; 2 Marshall's Rep. 74; 2 Henn. & Munf. Rep. 512.— To another witness who asked him whether he had a will, he replied "*no*," but added, after a pause, that he had the will, which had been written by the person by whom this was.   The evidence of this witness was submitted to the jury as testimony against the will.   But the weight of the testimony induced the jury to believe that Mason intended this paper to operate as his testament and that it contained the disposition of his personal property, which he wished to make.

The real questions in this case and in every other similar one, are, had the testator the *animus testandi,* and is this the disposition of his personal property, which he intended to make.   Many cases shew that an intention, never executed, to do some other act on the testamentary paper, or to transfer all the dispo-

sitions from it to another piece of paper, does not de-stroy the validity of the paper as a testament, if the evidence shew that the paper contains the disposition he intended to make of the property. If the omission to sign, seal and have a will attested, be destructive of its validity as a testament, on what principle have so many wills been established for the personal, and rejected as to the real estate? In the case of *Cogbill* vs. *Cogbill*, 2 Henn. & Munf. 467, the testator never intended to sign the paper that he wrote and which was established by the Supreme court of Virginia, as his testament. It contained the disposition he wished to make of both his personal and real estate, but that disposition he intended should be put in writing by another person, on another piece of paper, and the writing, when prepared, he intended to execute so as to pass his real estate. He had previously made a will so executed as to convey real estate and all his real, together with his personal property, was included in it. That was established as his devise, although the paper recognised as his testament, shewed his intention to dispose of his real as well as personal property, differently from what he had done by his first will. From the omission of Mason to execute the paper in this case so as to pass his real estate, it is inferred by the counsel of the plaintiff in error, that he abandoned the intention of executing and making this disposition of his personal property. In *Cogbill's* case, the testator had declared his intention never to sign the paper, which was established as his testament: and is an implied intention not to do so, to be allowed a more destructive effect than an expressed one? Cogbill had expressed his intention to do many other acts, and from

his omission to do them, it was insisted he had aban-
doned the intention of making the disposition of his .
personal property contained in the paper which he
wrote ; but the parol evidence, which is competent in
all such cases, shewed conclusively, that his inten-
tion to make that disposition, continued through the
last moment of his rational existence.   This case and
many others shew, that testamentary dispositions of
personal property must be determined independently
of the devises with which they may be connected, or
of the statute that regulates the latter.   They shew,
too, that a will must be recognized as to personal
property,, if the intention to dispose of such property
appear from the evidence required by the common
law, although the same will may be disregarded as a
devise, not for want of testimony to satisfy the mind
of what the real intention was, but for want of the
kind of evidence, which only the statute allows, to
shew the intention, where it concerns real estate.—
They shew also, that the real intention cannot, unless
it be proved as required by the statute, direct the dis-
position by will of real estate : but the statutory evi-
dence of intention, will direct the disposition in this
mode of such estates, although every one who
may hear such a case is satisfied, that the inten-
tion disclosed by this evidence is different from the
real one.   The real intention of Cogbill in relation
to his land, was different from that which appeared
in his first will, which operated as a devise of his
real estate.   The real intention is different from the
one shown by the statutory evidence, in all cases in
which persons, after having executed wills, so as to
pass real estate, make, afterwards, another with the
purpose of disposing of their land or other property,

differently, either in the whole or in part, and omit, in the execution of the second will, some of the formalities required by the statute that regulates devises.   The second will cannot convey the real estate, because it is defectively executed, and as it was intended to be a will, and not a mere revocation of the existing will, it cannot revoke that.   The real estate is, therefore, conveyed by the first will.   If the disposition of the personal property, by the second will be different from that made by the first, the first will must, according to the doctrine held by the plaintiff in error, prevail also, as to this property.— The real intention, as to the personal property, must be violated, also, and without the necessity to do so, which exists where real estate is concerned.   The common law allows the fact, that a testator intended to make the bequests in a writing, to be proved by parol evidence; but such testimony, in support of a devise, is prohibited by the statute : 1 Rob. on Wills, 148, 150, 151, 152, 156; 2 Henn. & Munf. 506 to 517; Comyn's Rep 451 to 456; 7 Bac. Abr. 238 239, (title, proof;) Toller's Law of Ex'ors. 2, 14, 58; Rob. on Frauds, 448; 1 John. Ch. Rep. 153; 2 Ld. Raym. 1282; Peck's Rep. 305, 306, 307; 1 Harris & M'-Hen. 509; 2 Nott & M'Cord, 531; 4 Vesey Jr. 200, and note B. ; 8 Ves. Jr. 470; 1 Call's Rep. 479; 3 Amer. Dig. 519, §31.

The instructions which the county court gave upon the trial of this cause, to the jury, recognised the doctrine, that the omission of the testator, to execute the paper strictly, as it appeared to have been prepared for such an execution, afforded a presumption, that he abandoned the intention to make it his testament; which, in the absence of other evidence, to

repel it, would be destructive of the character of the paper as a testament.   The instructions denied the correctness of the opinion of Roberts, which has been noticed; but they required the jury to believe from the evidence, that the intention of the testator to make this his testament, had continued until his death.

The instruction given by the court, as a substitute for the third one, which was refused, declares the true principle.   The instruction that was refused, might, had it been given, have been understood, that the testament was void, if, at any time after it was adopted, the testator intended to alter it merely.—The substitute declared, that to be his testament, it must have been adopted by him—that, if adopted, it became his testament, and the expression by him of his intention to alter it in part, could not affect it, as the intention was not executed; but, if the evidence shewed, that after he adopted it, he intended wholly to abandon it, it was void.   That the statute, which prohibits the revocation of written wills, unless it be done in writing, includes bequests, is obvious.   The latter are within the reason of the statute, and are called wills : 2 Chitty's Bla. Com. 403.   The last instruction, which the court refused, asserted the law to be, that if the jury believed Mason did not, at the time of his death, *believe* the paper was his testament, it was not a testamentory paper.   Belief is a state of mind, caused by evidence.   There is no testimony, to shew what was Mason's belief, at the time referred to, or during weeks before, as to the character of the paper.   How could the jury, without any evidence as to Mason's belief, believe, themselves, that he did not, at that time, believe it was his will.   To refuse,

therefore, to instruct upon a point which did not arise out of the evidence was right: Alabama Reports, 399.

The proposition is false. If Mason intended to make this disposition of his property, and did what he did, with the purpose of doing so, a belief, afterward entertained by him, without any change of intention, that his act did not accomplish his object, could not affect his act. Have not vendors of real estate, in many cases, believed that valid agreements to sell were too defective to operate?— Whoever thought of escaping the legal effect of the agreement, by proving that the one who claimed the benefit of it, had believed it was void?

The counsel for the plaintiff insists, that although the County court, in the opinion of this court, committed no error, either in giving or refusing instructions, if this court believe from all the evidence submitted to the jury, which is in the record here, the paper is not a testament—the judgment of that court must be reversed, and one be rendered here—that it is no testament. The statute of the State has provided for such cases, the kind of trial which was had in this: Ala. Dig. 194, sec. 9.

The County court neither ascertained the facts which were in controversy, nor acted on them in any way. This court has appellate jurisdiction only. If the verdict of the jury were to be set aside here— not because the County court erred, but on the ground, that the verdict was, as this court may think, against the evidence, the power by which it may be done, will be the exercise of original jurisidiction.— No application was made for a new trial, to the County court. The question, whether the verdict be or

be not, against the testimony, was never determined by that court. If it had been, this court could not review a decision made by an inferior one, in the exercise of a discretionary power. If this court were not only to set aside the verdict, but to render a judgment against the paper, as a testament, the judgment would be rendered in the exercise of original jurisdiction upon another ground than that which has been stated. As the facts have never been acted on by the County court, this court cannot know what the result of such action may be, when it becomes the duty of that court to act upon them.— This court has no power to ascertain facts, until after an inferior one has attempted to ascertain them. There must be some decision of an inferior court, which involves matter of law or fact, for this court to act upon. If this verdict can be disposed of differently from one in any other kind of case. The statute which authorised the action of a jury in this case required that to be done, which, in its result, is nothing. The trial was mockery—a thing that may be talked of, but not one to be regarded here.

The judgment of the county court, reversed.

LIPSCOMB, C. J. and SAFFOLD, PERRY, CRENSHAW and WHITE, Justices, for reversal.

COLLIER* and TAYLOR, Justices, dissented.

---

*NOTE BY JUDGE COLLIER.—Judge TAYLOR and myself dissented from the judgment in this case, on the ground, that Mason never intended to die intestate, but designed to provide for his sister and her children, and intended that the paper admitted to probate, should be his will (at least of the personalty,) although he never consummated it by signing it, and having it attested by witnesses.